**ORIGINAL**

# In the United States Court of Federal Claims

No. 18-653L (Pro Se)
(Filed: January 4, 2019)

|  |  |
|---|---|
| MICHAEL A. HERNANDEZ,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>　　　　　Defendant. | Keywords: Pro Se; Motion to Dismiss; Fort Laramie Treaty; Res Judicata; Claim Preclusion; Issue Preclusion; Iqbal; Twombly |

*Michael A. Hernandez*, Omaha, NE, pro se.

*Douglas T. Hoffman*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, with whom were *Deborah A. Bynum*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, and *Chad A. Readler*, Acting Assistant Attorney General, for Defendant.

**OPINION AND ORDER**

**KAPLAN, Judge.**

Plaintiff Michael A. Hernandez, appearing pro se, brings this suit alleging that the United States government violated the "bad men" clause of the Fort Laramie Treaty of 1868 by failing to prosecute what he alleges were various crimes and conspiracies against him related to his arrest, prosecution, and conviction for distributing methamphetamine. He also alleges that a Box Butte County (Nebraska) district judge and attorney engaged in a criminal conspiracy to dismiss a constitutional tort case he brought in Nebraska state court. Mr. Hernandez further alleges that the Commissioner of the Bureau of Indian Affairs, Department of the Interior, breached a fiduciary duty of trust it owed to him. Finally, in his Supplemental Complaint, Docket No. 23, Mr. Hernandez alleges that the staff at the Omaha Correctional Center—where he is currently incarcerated—conspired to deprive him of access to prison resources.

This is the third lawsuit Mr. Hernandez has brought in the Court of Federal Claims alleging violations of the Fort Laramie Treaty in connection with his arrest and prosecution. He has also filed several similar claims in various federal district courts.

The government has moved to dismiss Mr. Hernandez's complaint for lack of subject-matter jurisdiction and for failure to state a claim. For the reasons discussed below, the

government's motion to dismiss is **GRANTED**.

## BACKGROUND[1]

### I. The Present Dispute

Mr. Hernandez is a registered member of the Rosebud Sioux Tribe. He was convicted of distributing methamphetamine and is currently incarcerated at the Omaha Correctional Center ("OCC") in Omaha, Nebraska. Def.'s Mot. to Dismiss ("Def.'s Mot.") at 2, Docket No. 27.

On May 4, 2018, Mr. Hernandez filed a complaint in this court, alleging that "the United States, [its] United States Courts, the United States Dept. of Justice, and the United States Dept. of Interior's Bureau of Indian Affairs Commissioner have breached [their] fiduciary duties of trust to protect and enforce [his] Sioux Indian Treaty Rights in the Ft. Laramie Treaty of 1868, Art. I, [§] 16." Compl. at 3, Docket No. 1.

According to Mr. Hernandez's response to the government's motion, his claims can be sorted into four categories, each of which is described below.

#### A. The Arrest and Prosecution Claims

First, Mr. Hernandez argues that "the United States breached its fiduciary duties under [the Fort Laramie Treaty] by failing to arrest and prosecute [a] police officer, the prosecuting attorneys, his trial and appellate defense attorneys[,] and the presiding district court judge." Pl.'s Reply to Def.'s Mot. to Dismiss ("Pl.'s Reply") at 5, Docket No. 31 (internal abbreviations omitted); see also Def.'s Mot. at 2. Specifically, Mr. Hernandez alleges that police officer Ken Hart, along with Box Butte County attorneys Kathleen Hutchinson and Steve Elmshaeuser, conspired to wrongfully imprison him in retaliation for a class action lawsuit he filed in the U.S. District Court for the District of Nebraska. Compl. at 3–5.[2] He further contends that Box Butte County District Judge Brian Silverman and various court officers "conspired to create a 'criminal enterprise' by using Box Butte Co. Courts for racketeering activities." Id. at 7. Mr. Hernandez also alleges that his attorney, Dave Eubanks, "discriminated against the Plaintiff" and "knowingly acted in concert with the other court officers to wrongfully imprison the Plaintiff." Id. at 8–9. Finally, Mr. Hernandez alleges that his appellate lawyer, Len Tabor, "under conspiratorial circumstances" refused to appeal what he believes were several errors made by the trial court, which he claims "effectively left [Mr. Hernandez] without counsel on Direct Appeal."

---

[1] The facts set forth in this section are based on the allegations in Mr. Hernandez's complaint, which the Court assumes are true for purposes of deciding the government's motion to dismiss, as well as on jurisdictional facts drawn from any additional documents submitted by the parties.

[2] Mr. Hernandez's class action suit was filed against the State of Nebraska, Box Butte County, the City of Alliance, the Alliance Police Department, Western Intelligence Narcotics Group, and Larry Hudson. 2d Am. Compl. ¶ 7, Hernandez v. Nebraska, No. 8:01-cv-143 (D. Neb. June 2, 2003). In that suit, he claimed that the defendants were part of a scheme to "rid Box Butte County of Native Americans, one by one." Id.

Received = USCFC

JAN - 4 2019

Id. at 9–10.

### B. The RICO Claims

The second category of claims Mr. Hernandez presents concerns alleged violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO"). Specifically, according to Mr. Hernandez, the defense attorney and the district judge in "a civil suit involving an alleged 'Constitutional Tort[]' . . . conspired to have his suit dismissed." Pl.'s Reply at 5–6; see also Def.'s Mot. at 2. He contends that Judge Travis O'Gorman "wouldn't cite Attorney Vincent Valentino with criminal contempt of Court for making false entries into the Court Records and Obstruction for Justice," which "protected [an] established 'criminal enterprise.'" Compl. at 11–12. Mr. Hernandez argues that this so-called "criminal enterprise" engaged in racketeering activity in violation of RICO, specifically provisions thereof as codified at 18 U.S.C. §§ 1959, 1961, as well as other sections of the United States Code, including 18 U.S.C. §§ 201, 241, 242, 1503, 1512, 1513. Id. at 7, 12.

### C. The BIA Claim

Mr. Hernandez's third claim is that the Commissioner of the Bureau of Indian Affairs breached his fiduciary duty to act on Mr. Hernandez's complaints.[3] Id. at 12; see also Pl.'s Reply at 6; Def.'s Mot. at 2–3. This fiduciary duty, according to Mr. Hernandez, is owed to Sioux Indians under the Fort Laramie Treaty. Compl. at 12.

### D. OCC Allegations

The fourth category of claims presented by Mr. Hernandez is contained in a supplemental complaint filed on July 26, 2018. Docket No. 23. In this pleading, Mr. Hernandez alleges that the United States has failed to prosecute employees at the OCC who have allegedly conspired to deprive Mr. Hernandez of access to prison resources. Supp. Compl. at 2. Specifically, he alleges that Prison Staff Denise C. Morton, Case Manager Pozehl, Unit Manager Courtney, and Canteen Staff Steve Johnson conspired to deny him his "right to legal phone calls, mailing supplies, and copy tokens." Id. at 1–2. He believes these actions constitute a violation of 18 U.S.C. §§ 241, 242, 1512, 1513. Id. at 3.[4]

---

[3] The Court takes judicial notice of the fact that the Bureau of Indian Affairs is now under the supervision of the Assistant Secretary–Indian Affairs, not a commissioner. See U.S. Department of the Interior, Bureau of Indian Affairs (BIA), History of BIA, https://www.bia.gov/bia. At the time Mr. Hernandez filed the present lawsuit, John Tahsuda was the acting Assistant Secretary. Tara Katuk Mac Lean Sweeney assumed the position on July 30, 2018.

[4] On May 31, 2018, Mr. Hernandez moved for a preliminary injunction to "protect [his] First Amendment Right to have access to this court." Mot. for Prelim. Inj. at 1–2, Docket No. 7 (emphasis omitted). Mr. Hernandez alleged that prison staff with the State of Nebraska Department of Corrections "have been hindering" access to the court by "not allowing the Plaintiff to call this court or the U.S. Attorney's Office who contacted the Plaintiff about his complaint" and by "denying Plaintiff legal phone calls to any Attorney for legal representation."

### E. Relief Requested

In his complaint, Mr. Hernandez requests that the Court: 1) "uph[o]ld and enforce[]" his "Sioux Indian Treaty Rights"; 2) order the arrest and prosecution of "the Bad White Men and Persons named in [his] complaint"; 3) award him a total of $14 million in damages; and 4) award him punitive damages. See Compl. at 16; Supp. Compl. at 4.

## II. Prior Lawsuits in the Court of Federal Claims

Mr. Hernandez has previously filed two substantially similar lawsuits in this court involving the same operative facts, both of which were dismissed. In the first, Mr. Hernandez "allege[d] that state officials engaged in invidious racial discrimination against him because he is a member of the Rosebud Sioux Indian Tribe." Hernandez v. United States, 93 Fed. Cl. 193, 196 (2010) ("Hernandez I"). "Specifically, plaintiff allege[d] that perjured testimony was used at his trial . . . [and that] the Box Butte County Attorneys' Office committed prosecutorial misconduct, witnesses committed misconduct, judges committed judicial misconduct, and his court-appointed trial and appellate counsel ineffectively represented his interests in court." Id.

In Hernandez I, the court found that it did not have subject-matter jurisdiction over any of Mr. Hernandez's claims, concluding that "in order to bring action under the Fort Laramie Treaty a Native American must be a victim of an affirmative criminal act, and the person committing the act must be a specific white man or men." Id. at 200. The court dismissed Hernandez's complaint because the United States District Court for the District of Nebraska, the only named plaintiff that qualified as an agent of the United States for purposes of Tucker Act jurisdiction, was "not a specific white man, and may not qualify as a 'bad man' for the purposes of [the Treaty] without extending [it] beyond its intended bounds." Id.[5]

In his second case before the Court of Federal Claims, Mr. Hernandez alleged that the United States breached the Fort Laramie Treaty of 1868 by failing to arrest certain Box Butte County officials (including Officer Ken Hart and Judge Brian Silverman) for their role in a malicious and wrongful prosecution of Mr. Hernandez. Hernandez v. United States, 96 Fed. Cl.

---

Id. On August 20, 2018, Plaintiff filed a motion calling for an investigation into other alleged wrongdoings by prison staff at the OCC. Docket No. 28.

[5] In addition, the court noted that although the case was captioned as a suit against the United States, Mr. Hernandez had in fact stated claims containing allegations against the State of Nebraska Courts of Justice; Box Butte County District Court Judge Brian Silverman; the Box Butte County Attorney's Office; Court–Appointed Counsel Dave Eubanks, Len Tabor, and Paul Wess; the Box Butte County Sheriff's Office; the Alliance Police Department; Officer Ken Hart; WING; the State of Nebraska; the Nebraska Attorney General's Office; the United States District Court of Nebraska; and United States District Court of Nebraska Judges Kopf and Bataillon. Hernandez I, 93 Fed. Cl. at 197.

4

195, 198 (2010) ("Hernandez II").[6] The court ruled that "all of plaintiff's allegations of criminal behavior by various individuals who participated in his trial proceeding and conviction, listed throughout the complaint . . . cannot be heard in this court, which lacks jurisdiction to adjudicate claims based on the criminal code." Id. at 203. Further, the court held that it "does not have jurisdiction to review the decisions of state court Judge Silverman who presided over plaintiff's criminal case . . . [because] [t]his court does not possess jurisdiction to review decisions of other courts or the proceedings in other federal courts." Id. Mr. Hernandez also alleged various claims for "personal injuries, including loss of liberty, physical and mental pain, emotional distress, anxiety, humiliation, and loss of employment, and wages." Id. at 203–04 (internal quotation marks omitted). Likewise, the court dismissed these claims because "the Tucker Act expressly excludes tort claims, including those committed by federal officials, from the jurisdiction of the United States Court of Federal Claims." Id. at 204. Accordingly, Hernandez II was dismissed "for lack of jurisdiction and failure to state a claim." Id. at 205.

### III. The Government's Motion to Dismiss

The government moved to dismiss Mr. Hernandez's complaint in the present case on August 17, 2018 under RCFC Rules 12(b)(1) and 12(b)(6). Def.'s Mot. at 1. It argues: 1) that any claims related to Mr. Hernandez's arrest and prosecution are barred by res judicata, based on Hernandez I and Hernandez II; 2) that Mr. Hernandez has failed to state a claim under the Fort Laramie Treaty; and 3) that this Court lacks jurisdiction to entertain any of Mr. Hernandez's claims that seek nonmonetary relief. Id. at 4.[7]

## DISCUSSION

### I. Standards for Motions to Dismiss

In considering a motion to dismiss for lack of subject-matter jurisdiction, the Court accepts as true all undisputed facts in the pleadings and draws all reasonable inferences in favor of the plaintiff. Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011). The Court may, however, "inquire into jurisdictional facts" to determine whether it has jurisdiction. Rocovich v. United States, 933 F.2d 991, 993 (Fed. Cir. 1991). It is well established that complaints filed by pro se plaintiffs are held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). Nonetheless, even pro se plaintiffs must persuade the Court that jurisdictional requirements have been met. Harris v. United States, 113 Fed. Cl. 290, 292 (2013).

When considering a motion to dismiss for failure to state a claim under RCFC 12(b)(6),

---

[6] In this case, Mr. Hernandez named the United States, the "U.S. Dept. of Justice" and the "U.S. District Court of Nebraska" as defendants. Hernandez II, 96 Fed. Cl. at 198 n.1.

[7] In addition to the government's motion to dismiss and Mr. Hernandez's motions for a preliminary injunction and an investigation, also pending before the Court are: Mr. Hernandez's request (made in his surreply, Docket No. 35) that the government's motion to dismiss be stricken; and Mr. Hernandez's motion for a call of documents and discovery (Docket No. 24).

the Court accepts as true the complaint's undisputed factual allegations and construes them in the light most favorable to the plaintiff. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The Court draws all reasonable inferences in favor of the non-moving party, Sommers Oil Co. v. United States, 241 F.3d 1375, 1378 (Fed. Cir. 2001), but the complaint's factual allegations still "must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In other words, the plaintiff's claim must be "plausible on its face." Id. at 570; see also Acceptance Ins. Cos., Inc. v. United States, 583 F.3d 849, 853 (Fed. Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

## II.     Plaintiff's Claims Relating to His Arrest, Prosecution, and Imprisonment

The government moves to dismiss Mr. Hernandez's claims related to his arrest and prosecution, contending that the pursuit of such claims is barred by the doctrines of both issue and claim preclusion. It observes that Mr. Hernandez brought substantially similar claims before this court in 2010. See generally Hernandez I, 93 Fed. Cl. 193; Hernandez II, 96 Fed. Cl. 195. Both of these suits were dismissed, the first for lack of subject-matter jurisdiction and the second for lack of jurisdiction and failure to state a claim. Hernandez I, 93 Fed. Cl. at 200 ("[T]he Clerk of the Court shall dismiss the Amended Complaint without prejudice for lack of subject matter jurisdiction."); Hernandez II, 96 Fed. Cl. at 205 ("[T]his Court concludes plaintiff's complaint must be dismissed for lack of jurisdiction and failure to state a claim."). The government has also identified a series of cases filed in the United States District Court for the District of Nebraska in which Mr. Hernandez pressed substantially similar claims.[8] The Court agrees with the government—the claims relating to Mr. Hernandez's arrest and prosecution are subject to both issue and claim preclusion.

### A. Issue Preclusion

"The underlying rationale of the doctrine of issue preclusion is that a party who has litigated an issue and lost should be bound by that decision and cannot demand that the issue be

---

[8] Def.'s Mot. at 4. See Hernandez v. Frakes, No. 4:15-cv-3115, 2016 U.S. Dist. LEXIS 86696 (D. Neb. July 5, 2016) (dismissing complaint alleging government failed to correct prison overcrowding and discriminated against plaintiff for failure to state cognizable claims); Hernandez v. Neb. Dep't of Corr., No. 8:16-cv-141, 2016 U.S. Dist. LEXIS 73331 (D. Neb. June 6, 2016) (dismissing Mr. Hernandez's request for an order directing the prison law library to provide copies of case law as frivolous); Hernandez v. Nebraska, No. 4:13-cv-3004, 2013 U.S. Dist. LEXIS 70348 (D. Neb. May 16, 2013) (dismissing successive habeas claim challenging conviction for distribution of a controlled substance); Hernandez v. United States, No. 8:11-cv-134, 2011 U.S. Dist. LEXIS 69766 (D. Neb. June 29, 2011) (dismissing complaint alleging that plaintiff's wrongful conviction violated the U.S. Constitution and his rights under the Fort Laramie Treaty of 1868); Hernandez v. Houston, No. 4:09-cv-3070, 2009 U.S. Dist. LEXIS 119231 (D. Neb. Dec. 22, 2009) (dismissing petition for writ of habeas corpus alleging, among other things, judicial misconduct, prosecutorial vindictiveness, and ineffective assistance of counsel in connection with arrest and prosecution).

decided over again." In re Freeman, 30 F.3d 1459, 1465 (Fed. Cir. 1994). Under the doctrine of issue preclusion, or collateral estoppel, "a judgment on the merits in a first suit precludes relitigation in a second suit of issues actually litigated and determined in the first suit." Id. As distinguished from claim preclusion, the claim or cause of action need not be identical in both suits. Id. This is because "application of issue preclusion centers around whether an issue of law or fact has been previously litigated." Id. A party can invoke issue preclusion where:

> (1) the issue [in the second suit] is identical to one decided in the first action; (2) the issue was actually litigated in the first action; (3) resolution of the issue was essential to a final judgment in the first action; and (4) plaintiff had a full and fair opportunity to litigate the issue in the first action.

Id.

Mr. Hernandez's claims relating to his arrest and imprisonment meet these criteria. They were previously litigated and decided before this court not once, but twice. Mr. Hernandez himself has said as much: "The same claims were presented before this Court in Hernandez v. U.S., 93 Fed. Cl. 193 (2010), and Hernandez v. U.S., 96 Fed. Cl. 195 (2010)." Pl.'s Reply at 7. In both of his prior cases, Mr. Hernandez alleged facts relating to perjured testimony, witness bribery, judicial neglect, prosecutorial misconduct, and ineffective assistance of counsel. Def.'s Mot. at 3 (citing Hernandez I, 93 Fed. Cl. at 196; Hernandez II, 96 Fed. Cl. at 198–99).

Similarly, resolution of the court's jurisdiction over the arrest and prosecution claims was essential to final judgment in both prior cases. On both occasions, the court assessed whether it had jurisdiction to hear Mr. Hernandez's arrest and prosecution claims. In each case, the court found that it did not and subsequently dismissed. See generally Hernandez I, 93 Fed. Cl. 193; Hernandez II, 96 Fed. Cl. 195.

Finally, Mr. Hernandez had a full and fair opportunity to litigate the viability of his arrest and prosecution claims in his prior actions. Mr. Hernandez's contention—that "Judges Miller and Horn's Courts held a very narrow scope of review" and that "the CFC was improperly influenced by the Defendant, and [its] own prejudices"—are unpersuasive. Pl.'s Reply at 11. This Court has "no reason to doubt the quality, extensiveness, or fairness of the procedures followed in the [prior proceedings]." Freeman, 30 F.3d at 1467.

### B. Claim Preclusion

Claim preclusion offers another ground upon which the government is entitled to dismissal of Mr. Hernandez's claims relating to his arrest and prosecution. "A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981). Claim preclusion applies where: "1) the parties are identical or in privity; 2) the first suit proceeded to a final judgment on the merits; and 3) the second claim is based on the same set of transactional facts as the first." Phillips/May Corp. v. United States, 524 F.3d 1264, 1268 (Fed. Cir. 2008) (internal quotations and citations omitted).

All the elements of claim preclusion are met here based on the Hernandez II decision. The parties in Hernandez II are identical to the parties in the present case. Hernandez II

represents a final judgment on the merits because the court dismissed Mr. Hernandez's arrest and prosecution claims both for lack of jurisdiction and because, in any event, it found that he failed to state a claim. Hernandez II, 96 Fed. Cl. at 205.[9]

Finally, the allegations relating to Mr. Hernandez's prosecution and arrest that he brings before the Court now are the same as those he brought back in 2010. Both cases involve the "same set of transactional facts." Phillips/May Corp., 524 F.3d at 1271 ("[T]he question of whether two claims involve the same set of transactional facts . . . [considers] whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations.") (internal quotations and citations omitted). Accordingly, Mr. Hernandez's arrest and prosecution claims are barred by principles of res judicata and must be dismissed.[10]

### III. Plaintiff's Remaining Allegations

In addition to the arrest and prosecution claims, which are barred by res judicata, Mr. Hernandez alleges violations of the "bad men" provision of the Fort Laramie Treaty of 1868 arising out of other acts of alleged misconduct. Specifically, as noted above, he: 1) cites the RICO statute and claims that a Box Butte County District Judge and attorney Vincent Valentino "have unlawfully protected their established 'criminal enterprise' in Box Butte Co. Courts, by dismissing Plaintiff's Constitutional Tort Suit under conspiratorial means"; 2) alleges that "the Bureau of Indian Affairs Commissioner breached his fiduciary duty of trust to act on behalf of Plaintiff's complaints"; and 3) claims that "[t]he Nebraska Dept. of Corrections in Omaha

---

[9] Under Rule 41(b) of this court's rules, a dismissal for failure to state a claim operates as a final adjudication on the merits unless the dismissal order indicates otherwise. RCFC 41(b) ("Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule—except one for lack of jurisdiction or failure to join a party under RCFC 19—operates as an adjudication on the merits.").

[10] Mr. Hernandez appears to advance the argument that his arrest and prosecution claims are not barred by res judicata because of the court of appeals's intervening decision in Jones v. United States, 846 F.3d 1343 (Fed. Cir. 2017), which he contends shows that "[t]he Defendant in Plaintiff's prior suits fraudulently concealed and misrepresented the Plaintiff's Treaty rights in the Federal Court of Claims." See Pl.'s Reply at 9. To be sure, "[a] defendant cannot justly object to being sued on a part or phase of a claim that the plaintiff failed to include in an earlier action because of the defendant's own fraud." Restatement (Second) of Judgments § 26 (1982). But even assuming that the government's legal position in the prior cases (or the court's decisions) were somehow undermined by Jones (a proposition on which the Court expresses no opinion), that would not establish "fraud" on the government's part. Moreover, "[a] judgment merely voidable because [it is] based upon an erroneous view of the law is not open to collateral attack, but can be corrected only by a direct review and not by bringing another action upon the same cause [of action]." Federated Dep't Stores, 452 U.S. at 398 (alternation in original) (internal quotations and citations omitted).

8

Correctional Center have conspired to deprive the Plaintiff access to this Court, a First Amendment violation." Compl. at 12; Pl.'s Reply at 22.

The "bad men" provision of the Fort Laramie Treaty states that "[i]f bad men among the whites, or among other people subject to the authority of the United States, shall commit any wrong upon the person or property of the Indians, the United States will . . . reimburse the injured person for the loss sustained." Fort Laramie Treaty art. I, April 29, 1868, 15 Stat. 635. It is well established that the Court of Federal Claims has Tucker Act jurisdiction over a claim for money damages brought under the "bad men" provision of the Fort Laramie Treaty. Garreaux v. United States, 77 Fed. Cl. 726, 735 (2007); see also Hebah v. United States, 192 Ct. Cl. 785, 791 (1970). It lacks jurisdiction, however, to entertain any of Mr. Hernandez's claims that seek nonmonetary relief, such as ordering the arrest and prosecution of various individuals whom he names in the complaint as having committed wrongs against him. See, e.g., James v. Caldera, 159 F.3d 573, 586 (Fed. Cir. 1998) (acknowledging that the Court of Federal Claims has authority to enter injunctive relief only where such relief is an incident of and collateral to a judgment for monetary relief).

"To state a claim for relief under the bad men provision requires the identification of particular 'bad men,' and an allegation that those men committed a wrong within the meaning of the treaty." Jones v. United States, 846 F.3d 1343, 1352 (Fed. Cir. 2017). "[O]nly acts that could be prosecutable as criminal wrongdoing are cognizable under the bad men provision." Id. at 1355. Further, as the Federal Circuit strongly suggested (if not held) in Jones, there are at least some geographical limitations on the applicability of the "bad men" provision in the Fort Laramie Treaty. Id. at 1359–60. Thus, in Jones, the court of appeals observed that the "bad men provision" takes cognizance of activities that either occur on-reservation or that were "a clear continuation of activities that took place on-reservation" and remanded the case to the Court of Federal Claims to make that "heavily fact-dependent" determination. Id. at 1360–61.

The Court agrees with the government that none of Mr. Hernandez's allegations states a claim under the Fort Laramie Treaty. Although Mr. Hernandez is a member of the Rosebud Sioux Tribe, he asserts no facts that would establish a nexus between the acts of which he complains and activities that occurred or began on the Rosebud Indian Reservation (which is in South Dakota). To the contrary, all of the activities about which Mr. Hernandez complains in this case appear to have occurred in Nebraska.

Further and in any event, the BIA claim does not identify a cognizable wrong under the Fort Laramie Treaty because it is based on an alleged breach of a fiduciary obligation, which is not a criminal offense. And while Mr. Hernandez cites criminal conspiracy statutes such as RICO and 28 U.S.C. § 241 in his pleadings, his mere citation of those statutes is insufficient to state a claim under the Fort Laramie Treaty. In deciding a motion to dismiss, this Court must accept as true only the facts alleged by the nonmoving party. See generally Iqbal, 556 U.S. 662. The same does not apply to legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Id. at 678. In the context of alleged conspiracies in particular, the mere "assertion of an unlawful agreement [is] a 'legal conclusion' and, as such, [is] not entitled to the assumption of truth." Id. at 680 (citing Twombly, 550 U.S. at 555) (internal quotation marks omitted).

9

Here, Mr. Hernandez alleges in conclusory fashion that he was a victim of unlawful conspiracies, but provides no plausible or specific facts to support his claims. See Compl. at 12 (alleging that Box Butte County District Judge Travis O'Gorman and attorney Vincent Valentino "have unlawfully protected their established 'criminal enterprise' . . . under conspiratorial means"); Pl.'s Reply at 22 ("The Nebraska Dept. of Corrections in Omaha Correctional Center have conspired to deprive the Plaintiff access to this Court."). To support the allegation of a conspiracy between Judge O'Gorman and Mr. Valentino, for example, Mr. Hernandez notes only the fact that the judge failed to hold Mr. Valentino in contempt of court for allegedly making false entries into the court record and the fact that the suit was ultimately dismissed. See Compl. at 11–12. The only plausible conclusion that can be drawn from these facts, however, is that Mr. Hernandez lost his case. As for his OCC conspiracy claims, Mr. Hernandez alleges various acts such as being forced to leave the law library, being double billed for a letter sent to a law firm, being denied access to a notary, etc. See Supp. Compl. Ex. 5, at 1–3. Accepting these facts as true does nothing to support the allegation that there is a criminal conspiracy to deprive Mr. Hernandez of his rights. See Hernandez v. United States, No. 8:11-cv-134, 2011 U.S. Dist. LEXIS 69766, at *3 (D. Neb. June 29, 2011) ("A pro se plaintiff must set forth enough factual allegations to 'nudge[] their claims across the line from conceivable to plausible.'") (quoting Twombly, 550 U.S. at 569–70).

In short, as to those of his claims that are not subject to res judicata, Mr. Hernandez has failed to state a claim under the Fort Laramie Treaty. His complaint, accordingly, must be dismissed.

## CONCLUSION

For the foregoing reasons, the government's motion to dismiss for failure to state a claim is **GRANTED**, and Mr. Hernandez's complaint is **DISMISSED** in its entirety. Accordingly, Mr. Hernandez's motion for a preliminary injunction, the request in his surreply that the government's motion to dismiss be stricken, his motion for a call of documents and discovery, and his motion to investigate are **DENIED**. The Clerk is directed to enter judgment accordingly. Each side shall bear its own costs.

**IT IS SO ORDERED.**

ELAINE D. KAPLAN
Judge